**Omar Ahmed ALI, Petitioner,**

v.

**Janet RENO, as Attorney General of the United States, and Rick M. Reish, Warden, Federal Correctional Facility, Otisville, New York, Respondents.**

**Omar Ahmed ALI, Petitioner,**

v.

**Janet RENO, as Attorney General of the United States, Respondent.**

**Nos. 93 Civ. 4661 (CLB) and 93 Civ. 4683 (CLB).**

United States District Court, S.D. New York.

Aug. 16, 1993.

Barbara Nelson, Nelson & Turkhud, New York City, for petitioner.

Mary Jo White, U.S. Atty., Gabriel Gorenstein, Diogenes Kekatos, Asst. U.S. Attys., New York City, for respondents.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

On July 9, 1993, Petitioner Omar Ahmed Ali, an Egyptian cleric being detained by Immigration and Naturalization Services at the Federal Correctional Institution in Otisville, New York, in this district filed a Petition for a Writ of Habeas Corpus pursuant to Section 2241, 28 U.S.C. § 2241. The Petitioner seeks review of the July 2, 1993 Order of James W. Pomeroy, District Director of the Immigration & Naturalization Service, in which the Petitioner's parole was revoked pursuant to Regulation 212.5(d)(2)(i) of Chapter 8 of the C.F.R.

On July 12, 1993, Petitioner filed a second Petition for a Writ of Habeas Corpus to review an Order of the Board of Immigration Appeals dated July 9, 1993 that dismissed an appeal from a decision of Immigration Judge Daniel J. Meisner dated March 16, 1993. Certified Record, at 1–8.[1] In the March 16, 1993 decision, the Immigration Judge decided that he lacked jurisdiction to review District Director Pomeroy's March 6, 1992 Order rescinding Petitioner's permanent resident status. The Immigration Judge also denied Petitioner's application for political asylum or the withholding of deportation to Egypt and found that there were reasonable grounds for regarding the Petitioner as a danger to the security of the United States. Record, at 92–116.

On July 15, 1993, this Court held a joint case management conference for both cases. At this conference, Petitioner presented the Court with a proposed Order to Show Cause, to be issued pursuant to Section 2243 of Title 28, 28 U.S.C. § 2243, directing the respondent(s) to show cause why a writ of habeas

corpus should not be granted setting aside the final order of exclusion and the District Director's rescission of Petitioner's status as a lawful permanent resident. *See* Court File No. 93 Civ. 4683, Doc. No. 4. The Order to Show Cause was issued and made returnable on July 23, 1993.[2] The return date was later adjourned on consent until August 2, 1993 and the parties agreed that deportation would be stayed until ten days after a decision by this Court on the Order to Show Cause. *See* Court File No. 93 Civ. 4661, Doc. No. 6; Court File No. 93 Civ. 4683, Doc. No. 7. At the case management conference, the Petitioner and the Government agreed that the petitions for a Writ of Habeas Corpus present issues of law only, which can be resolved on the administrative record developed below. *See* July 15, 1993 Transcript, 2–3, 4.

On August 2, 1993, this Court held a hearing, and after oral argument, the Court reserved decision. The following constitutes this Court's decision on all of the issues presented in the petitions for a Writ of Habeas Corpus filed on July 9, 1993 and July 12, 1993, respectively.

As a preliminary matter, the Court notes that it has subject matter and *in personam* jurisdiction to review the order terminating parole pursuant to Section 1329 of Title 8, 8 U.S.C. § 1329 (1970 & Supp.1993)[3] and Section 2241 of Title 28, 28 U.S.C. § 2241 (1971 & Supp.1993), insofar as the Petitioner is in custody pursuant to the Immigration & Nationality Act and such custody allegedly is in violation of the Constitution, the Act and the regulations promulgated thereunder. *See Bertrand v. Sava*, 684 F.2d 204, 209 (2d Cir.1982) (federal courts may exercise habeas corpus jurisdiction to review allegations that an INS District Director has abused his discretion in making parole decisions). The statutory authority for this Court's exercise of jurisdiction over the petition for review of

---

1. The Certified Record (hereinafter referred to as "Record") is docketed in 93 Civ. 4661 as document numbers 8 and 9. A copy of the Record is docketed in 93 Civ. 4683 as document number 5.

2. The Government accepted personal service of the Order to Show Cause in Court on July 15, 1993. *See* July 15, 1993 Transcript, at 11.

3. Section 1329 provides in relevant part that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter...." 8 U.S.C. § 1329 (1970 & Supp. 1993).

the final order of exclusion is found in Section 1105a(b) of Title 8, 8 U.S.C. § 1105a(b) (1970 & Supp.1993).[4] Venue is proper in both cases because the Petitioner is confined at a federal facility within this District. 28 U.S.C. § 2241(d).

Our consideration of the issues raised by the Petitioner requires a brief review of the relevant uncontested facts and the prior administrative proceedings had herein. On December 16, 1990, the Petitioner, a 55 year old citizen of Egypt who is blind, entered the United States as a non-immigrant visitor. Record, at 104, 174–75. On January 31, 1991, Petitioner applied for an adjustment of his immigration status from that of a visitor to that of an alien lawfully admitted for permanent residence. Record, at 407–409 (Form I–485, Application for Status as a Permanent Resident). On April 8, 1991, the Immigration and Naturalization Service granted the Petitioner's application for lawful permanent resident status as a "minister of religion." Record, at 407. *See* 8 U.S.C. § 1101(a)(27)(C)(ii)(I).

In June of 1991, the Petitioner left the United States and went on a Haj, or religious pilgrimage, to Saudi Arabia. Record, at 23. On July 31, 1991, Petitioner presented himself to immigration inspectors at J.F.K. International Airport and sought to be readmitted into the United States as a returning resident alien. Instead, Petitioner's inspection was deferred and he was paroled into the United States pending completion of his inspection. *See* Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 1.

After several interviews and by notice dated ____, 1992 (probably January 16, 1992 but the date is illegible on the copy of the document submitted to this Court), the District Director advised the Petitioner of the Immigration and Naturalization Service's intent to rescind Petitioner's special immigrant status on the ground that the Petitioner, at the time the adjustment of status was made originally, was excludable from admission to the United States under (1) Section 212(a)(11), 8 U.S.C. § 1182(a)(11), as a polygamist or one who practices polygamy[5]; (2) Section 212(a)(6)(C), 8 U.S.C. § 1182(a)(6)(C), based on misrepresentations of material facts, e.g., failure to disclose marital status; (3) Section 212(a)(2)(A), 8 U.S.C. § 1182(a)(2)(A)[6], as a result of a December 8, 1987 conviction for a crime of moral turpitude, namely falsification of a private note "Cheque;" and (4) Section 212(a)(6)(C), 8 U.S.C. § 1182(a)(6)(C), based on misrepresentations of material facts, e.g., failure to disclose his prior arrest and conviction. *See* Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 2; Record at 286–287. The Notice further advised the Petitioner that he had 30 days within which to submit "an answer in writing under oath setting forth reasons why such rescission should not be made" or "within the time allowed, [to] request a hearing before an Immigration Judge in support of, or in lieu of, a written answer." *Id.* Finally, Petitioner was advised that he had the right to assistance of counsel in preparation of the answer or in connection with a hearing. *Id.* *See* 8 C.F.R. § 246.1 (notice of intent to rescind and right to counsel provision); 8 C.F.R. § 3.16 (general right to counsel at no expense to the Government).

By letter dated January 17, 1992, Zeinab Aly Massoud, a privately retained attorney for the Petitioner, requested "60 days to respond to the District Director's [sic] notice" and a copy of the documents supporting the allegations. *See* Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 3. This request was never acted upon nor acknowledged. By letter dated February 25, 1992, some five weeks later, and after expiration of the time initially al-

---

4. Section 1105a(b) states:

 Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 1226 of this title or comparable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings and not otherwise.
 8 U.S.C. § 1105a(b).

5. The analogous provision under the 1991 Amendment is 8 U.S.C. § 1182(a)(9)(A). Before 1990, the law barred aliens who are polygamists or who practice polygamy or advocate the practice of polygamy from becoming permanent resident aliens. The 1990 law only prevents practicing polygamists from becoming permanent resident aliens.

6. The analogous provision under the 1991 Amendment is 8 U.S.C. § 1182(a)(2)(A)(i)(I).

lowed for a response to the notice, Attorney Massoud wrote the INS that she no longer represented Mr. Ali. *See* Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 4.

By Order dated March 6, 1992, District Director Pomeroy rescinded Petitioner's status of permanent resident alien due to his failure to respond within 30 days to the allegations contained in the January 16, 1992 Notice pursuant to Section 246 of the Immigration and Nationality Act, 8 U.S.C. § 1256, and Regulation 246.2 of Chapter 8 of the Code of Federal Regulations. Petitioner was advised of this decision by letter dated March 6, 1992. Record, at 288–89. Based on the rescission, Petitioner was given notice that there would be an exclusion hearing on April 30, 1992 at 8:30 AM before an Immigration Judge to determine whether or not he should be excluded and deported pursuant to Section 212(a)(7)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid immigrant visa or other documentation permitting entry into the United States. Record, at 248.

At the April 30, 1992 exclusion hearing, Petitioner appeared with new counsel, Vincent Agresti, Esq. who requested an adjournment. Record, at 123–24. The hearing was adjourned until May 14, 1992. On the adjourned date, counsel conceded that Petitioner was properly in exclusion proceedings and was excludable under Section 212(a)(7)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid immigrant visa or other documentation permitting entry into the United States. Record, at 122. Counsel also conceded that the Petitioner was served with the notice of intent to rescind but failed to "file a proper answer within the required time." Record, at 121–122. Counsel noted, however, that a motion to reopen the rescission proceeding had been filed. *Id.*

By letter dated June 10, 1992, the firm of Nelson & Turkhud requested of the Immigration Judge by letter that they be substituted as counsel for the Petitioner. New counsel also moved before the Immigration Judge to vacate the District Director's rescission order and terminate the exclusion proceedings. New counsel also enclosed with the letter an Application for Political Asylum and Withholding of Deportation, Form I–589 [7], which it described as a "last resort" in the event the rescission order were not vacated. Record, at 251–52, 264–70; Petitioner's Memorandum, at 5.

On June 12, 1992 and again on September 1, 1992, the Immigration Judge's Clerk forwarded a copy of the application for political asylum and withholding of deportation to the U.S. Department of State, Bureau of Human Rights and Humanitarian Affairs for comment pursuant to 8 C.F.R. 208.11. Record, at 263, 271. *See* 8 C.F.R. §§ 208.11, 236.3(b).

In a four page opinion letter dated October 23, 1992, Roger Denkert, the Director of the Office of Asylum Affairs for the Bureau of Human Rights and Humanitarian Affairs describes the Petitioner, who is "known in Egypt as Omar Ahmed ABDEL RAHMAN", as "one of the best known figures in Egypt's Islamic fundamentalist movement. He is the spiritual guide and founder of the extremist Al–Gama'a al-Islamiyya." Record, at 282. The letter explains that the Petitioner's "adherents ... have been responsible for conducting several spectacular terrorist incidents, including the assassinations of President Anwar El–Sadat (1981) and the Speaker of the People's Assembly (1990), Rifa't Al–Mahgoub ..., and attacks against Egypt's Christian Coptic community and on symbols of the Egyptian Government." *Id.* The letter then describes some of the hundreds of "violent incidents provoked" by the Al–Gama'a al-Islamiyya between July of 1988 and June of 1992. Although recognizing that the Petitioner had been under house arrest in the past and that "house arrest may await him upon return" to Egypt, the Director concluded that the Petitioner's "activities [in

---

7. In his March 16, 1993 Decision, Immigration Judge Daniel A. Meisner states that the application for asylum and withholding of deportation was filed on August 27, 1992, while petitioner's counsel states that the application was mailed on June 10, 1992. *Compare* Record, at 94 (March 16, 1993 Decision, at 3), *with* Record, at 251. Apparently, the original application was not complete. The complete application was resubmitted on August 14, 1992 and filed on August 27, 1992. Record, at 273–280.

Egypt] should make him ineligible for the grant of asylum." Record, at 282, 285. The Director concluded his letter by noting that "[t]his advisory opinion is accompanied by a classified letter ... which summarizes information available to the U.S. concerning the continuing involvement of Abdul Rahman in terrorist activities which would have detrimental foreign policy consequences for the U.S. Government." Record, at 285.

The exclusion hearing resumed on October 27, 1992. At this time, counsel for the Petitioner urged the Immigration Judge to review the March 6, 1992 order rescinding Petitioner's permanent resident status. The Immigration Judge told counsel to file a brief and reserved decision on the issue. Record 135–136. The exclusion hearing was continued and concluded on January 20, 1993.

In a decision dated March 16, 1993, Immigration Judge Daniel J. Meisner found the Petitioner excludable under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid immigrant visa or other documentation permitting entry into the United States, a fact conceded by prior counsel at the May 14, 1992 exclusion hearing. Record, at 92–116. The Immigration Judge concluded that he lacked jurisdiction to review the March 6, 1992 Order rescinding Petitioner's permanent resident status. The Immigration Judge denied the application for asylum and withholding of exclusion pursuant to Sections 208(a) and 243(h) of the Act, 8 U.S.C. §§ 1158(a), 1253(h), and found that there were reasonable grounds for regarding the Petitioner as a danger to the security of the United States. Record, at 116.

In the meantime, on June 10, 1992, counsel filed an application with the District Director to reopen for reconsideration, the March 6, 1992 Order of rescission of permanent resident status. By letter dated May 28, 1992, the District Director denied the application stating that:

> ... In this case the service [of notice of intent to rescind] was by hand by an officer of this Service in the presence of the

applicant's attorney and an interpreter.... The notice submitted by the subjects [sic] prior attorney, although timely, neither admits or contests the allegations or requests a hearing, but requests an additional 60 days for a response and copies of documentation. Such a request is not permitted by regulation nor does such a request serve to stay the issuance of a rescission order....

> The fact that the subject's prior counsel withdrew from the case subsequent to the final notice or that there was lack of communication between the subject and counsel is not relevant to this proceeding.[8]

See Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 7.

By letter dated July 2, 1993 and addressed to the Petitioner, District Director Pomeroy advised the Petitioner that his parole was revoked pursuant to Section 212.5(d)(2)(i) of Chapter 8 of the C.F.R. This section provides:

> (d) Termination of Parole—

> (2)(i) On notice. In cases not covered by paragraph (d)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of the District Director in charge of the area in which the alien is located neither emergency nor public interest warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status which he or she had at the time of parole. Any further inspection or hearing shall be conducted under section 235 [8 U.S.C. § 1225] or 236 [8 U.S.C. § 1226] of the Act and this chapter, or any order of exclusion and deportation previously entered shall be executed. If the exclusion order cannot be executed by deportation within a reasonable time, the alien shall again be released on parole unless in the opinion of the District Director the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(d)(2)(i). In revoking Petitioner's parole, District Director Pomeroy

---

8. In fact, petitioner's prior counsel withdrew after the time within which the petitioner was entitled to answer the charges, but before any decision, or final notice.

determined that continued parole "is neither warranted by emergency nor the public interest." *See* Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 9.

On July 9, 1993, the Board of Immigration Appeals affirmed the Immigration Judge's March 16, 1993 decision and entered a final order of exclusion against the Petitioner. Record, at 2–8.

Petitioner seeks review of this July 9, 1993 decision, as well as the March 16, 1993 decision of Judge Meisner and the July 2, 1993 Order of District Director Pomeroy in which the Petitioner's parole was revoked. Petitioner argues that the administrative bodies considering his case erred in the following respects: (1) that the Board of Immigration Appeals, in reviewing the Immigration Judge's decision, erred in concluding that it lacked jurisdiction to review and/or vacate the District Director's March 6, 1992 Order of Rescission; (2) that the District Director had no authority to commence rescission proceedings during the deferred inspection period and, that in doing so, the District Director violated the Immigration and Naturalization Service's own regulations which constitutes reversible error under *Montilla v. I.N.S.*, 926 F.2d 162 (2d Cir.1991) and its progeny; (3) that the District Director, in rescinding Petitioner's permanent residence status, violated the Act and Immigration & Naturalization Service's own regulations regarding the right to assistance of counsel and the right to a hearing before an Immigration Judge; (4) that the Board of Immigration Appeals, in reviewing the Immigration Judge's decision, erred in denying Petitioner's application for asylum and withholding of deportation pursuant to Sections 208(a) and 243(h) of the Act, 8 U.S.C. §§ 1158(a), 1253(h); (5) that the Immigration Judge's consideration of classified material, which he represented to counsel he would not consider, deprived Petitioner of a fair hearing and due process; (6) that the Immigration Judge erred in not permitting the Petitioner to take discovery, including interrogatories and document discovery, concerning matters contained in the classified documents; and (7) that the District Director erred in terminating Petitioner's parole on July 2, 1993 without a pre-termination hearing, allegedly in violation of INS's own ad-ministrative procedures as provided in Regulation 212.5.

However, the "core" issue, Petitioner contends, and this Court agrees, is whether the March 6, 1992 Order of District Director Pomeroy rescinding Petitioner's lawful resident status is valid. It is argued that the validity of the exclusion order and the detention related thereto, are conditioned upon the validity of the rescission order which deprived Petitioner of permanent resident status. Petitioner's Reply Memorandum, at 2–3; August 2, 1993 Transcript, at 10–12, 14, 37. This is true, because if the District Director's rescission of Petitioner's permanent resident status was invalid for want of jurisdiction or otherwise, then there would have been no basis for the Immigration Judge to exclude Petitioner under Section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of documentation permitting entry into the United States, or for the District Director to terminate his parole without a hearing pursuant to Regulation 212.5(d)(2)(i).

■ The Court first considers Petitioner's argument that the Board of Immigration Appeals erred in affirming the Immigration's Judge's denial of Petitioner's application to vacate the District Director's rescission of the Petitioner's lawful permanent resident status and to terminate the exclusion proceedings. Petitioner contends that the Immigration Judge and Board of Immigration Appeals concluded improperly that they lacked jurisdiction to review the District Director's Order of rescission dated March 6, 1992.

■ Regulation 246.1 provides that a Notice of Intention to Rescind shall inform the permanent resident alien that "he may submit, within thirty days from the date of service of the notice, an answer *in writing and under oath setting forth reasons why such rescission shall not be made,* and that he may, within such period, request a hearing before a special inquiry officer in support of, or in lieu of his written answer." 8 C.F.R. § 246.1 (emphasis added). Regulation 246.2 provides, in relevant part, that:

[I]f no answer is filed within the thirty-day period, or if no hearing is requested within such period, and the status of that of a permanent resident was acquired through adjustment of status under section 245 or 249 of the Immigration and Nationality Act, the district director *shall* rescind the adjustment of status previously granted, and *no appeal shall lie from his decision.* 8 C.F.R. § 246.2 (emphasis added). The language of the Regulation is compulsory—If no answer is filed or no hearing is requested, the District Director shall rescind Petitioner's lawful resident status. There can be no appeal from a decision to rescind made pursuant to Regulation 246.2.

Petitioner contends that former counsel's letter dated January 17, 1992, without more, was a "proper answer." Petitioner's Memorandum, at 16. The District Director determined that it was not and, therefore, rescinded Petitioner's lawful residence status. Once this was accomplished, Petitioner had no right to appeal the District Director's Order. The Immigration Judge and the Board of Immigration Appeals, in turn, determined that they lacked appellate jurisdiction to review the Order of Rescission because of the express language of Regulation 246.2.

■ The Immigration Judge and the Board of Immigration Appeals determined that they lacked appellate jurisdiction pursuant to Regulation 3.1(d)(1–a)(i)(B) as well. Regulation 3.1(d)(1–a)(i)(B) provides as follows:

The Board may summarily dismiss any appeal or portion of any appeal in any case in which:

(B) The only reason for the appeal specified by the party concerned involves a finding of fact or a conclusion of law that was conceded by that party at a prior proceeding.

8 C.F.R. § 3.1(d)(1–a)(i)(B) (1993).

At the exclusion hearing on May 14, 1992, Petitioner's second attorney, Mr. Agresti, conceded that Petitioner was served with the Notice of Intention to Rescind and that he had failed to "file a proper answer within the required time." Record at 121–122. Petitioner's present counsel made the same con-

cession in her Brief in Support of Appeal filed with the Board of Immigration Appeals on June 15, 1993. Record, at 13 ("Applicant's first attorney failed to answer the charges in the notice of intent to rescind....."). Present counsel also acknowledged in her "Memorandum in Support of the Immigration Judge's Authority to Vacate the District Director's Rescission Order", dated January 14, 1993, that Petitioner's first attorney "requested more time than permitted" by Regulation 246.1, which she characterized as "an extension of a time that was mandated by regulation and which could not be extended." Record, at 459.

Nonetheless, Petitioner now argues that he has the right to "withdraw an improvidently made concession" or, alternatively, that "it would be manifestly unjust not to permit an attorney to pursue all avenues of relief." Record, at 13; Petitioner's Memorandum, at 10. Essentially, Petitioner argues that if an attorney adopts a litigation strategy that proves to be unsuccessful, Petitioner simply can back away, unilaterally, from this approach and proceed on a different theory at any point in the proceeding. This Court disagrees.

■ Petitioner's position is contrary to the well established jurisprudential precept of finality, as well as Regulation 3.1(d)(1–a)(i)(B). As the Board of Immigration Appeals stated, "absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." *In re Velasquez,* 19 I. & N.Dec. 377, 382, 1986 WL 67716 (BIA 1986).

Petitioner urges this Court to look for guidance to cases concerning the withdrawal of guilty pleas in criminal proceedings. Reply Memorandum, at 11–13. The Court declines to do so. A hearing conducted in an immigration proceeding is civil in nature and therefore many of the protections that are required by public policy or the Constitution in the context of a criminal proceeding simply do not apply. *See, e.g., I.N.S. v. Lopez–Mendoza,* 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 3482–83, 82 L.Ed.2d 778 (1984).

Petitioner's counsel next attempts to distinguish those cases cited by the Government on the ground that "each and every case cited by the Government concluding that a concession is binding on the alien involves a concession in a deportation hearing." This simply is not true. *See, e.g., In re Exilus,* 18 I. & N.Dec. 276 (BIA 1982) (applicant conceded excludability on the advice of counsel). In any event, this claimed distinction has no validity. It does not strengthen Petitioner's position that he should be permitted to repudiate prior counsel's concessions regarding the rescission and exclusion issues. Deportation proceedings are far more favorable to the alien than exclusion proceedings. *See Correa v. Thornburgh,* 901 F.2d 1166, 1171 n. 5 (2d Cir.1990) ("Rights available in deportation but not exclusion proceedings include advance notice of the charges, a burden of proof placed on the government, direct appeal to the Court of Appeals, the right to seek suspension of the order, and the right to designate the country of destination."); *See also Landon v. Plasencia,* 459 U.S. 21, 26–27, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21 (1982); *Leng May Ma v. Barber,* 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958). That the courts have determined that admissions and concessions in deportation proceedings are binding, absent a showing of egregious circumstances, provides further justification for concluding that similar concessions made in a rescission or exclusion proceeding should be binding on an alien as well.

Based upon a review of the record, the Court concludes that there has been no showing that counsel's concessions regarding rescission and excludability were inadvertent, unfair or extraordinary. Prior counsel had a factual basis for concluding that the rescission was valid and that Petitioner was subject to exclusion because no answer to the charges had been filed. Petitioner has not proffered any evidence to overcome the strong presumption that prior counsel's concessions were tactical and reasonably intended to narrow the issues before the Immigration Judge so that an asylum hearing could go forward. *Cf. In re Velasquez,* 19 I. & N.Dec. 377, 1986 WL 67716, 1986 BIA LEXIS 8, *12 (April 9, 1986) (strong presumption that concession of deportability is reasonable

tactical decision), *citing Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In fact, such concessions are not extraordinary during exclusion and deportation proceedings. *See In re Roman,* 19 I. & N.Dec. 855 (BIA 1988) (Petitioner conceded deportability on ground charged); *In re Velasquez,* 19 I. & N.Dec. 377, 1986 WL 67716 (BIA 1986) (Petitioner admitted factual allegations and conceded deportability); *In re Exilus,* 18 I. & N.Dec. 276 (BIA 1982) (applicant conceded excludability on the advice of counsel); *Zamora v. I.N.S.,* 534 F.2d 1055 (2d Cir.1976) (Petitioners conceded their deportability).

The Immigration Judge and the Board of Immigration Appeals treated the Petitioner properly as bound by prior counsel's concessions and read their Regulation reasonably to bar Petitioner from reverting to an abandoned strategy when the later one turned out to be unsuccessful. As such, any defenses that might have been available to the Petitioner in the rescission proceeding have been lost. Because this Court finds that the concessions are binding upon the Petitioner and determinative of the rescission issue, the Court need not address whether the alleged misrepresentations in Petitioner's application for adjustment of status were material or willful under *In re S——— and B——— C———,* 9 I. & N.Dec. 436 (1960) or whether Petitioner's arrival in the United States on July 31, 1991 constitutes an "entry" under *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963).

Moreover, this Court concludes that the Immigration Judge and the Board of Immigration Appeals properly determined that they lacked jurisdiction to reconsider the District Director's rescission order and that such a request, if made at all, would have to be made to the District Director directly, in the form of a motion to reopen. See *In re Rodriguez–Esteban,* 1989 WL 331869, 1989 BIA LEXIS 24 (BIA July 13, 1989). On June 10, 1992, Petitioner made an application to reopen to the District Director arguing that the Petitioner "was under the impression that his previous lawyer had in fact responded to the Services [sic] notice to rescind when the lawyer requested additional

time to respond to the notice...." *See* Court File No. 93 Civ. 4683, Doc. No. 10. The District Director denied the application by letter dated May 28, 1992, after finding that the January 17, 1992 letter of Petitioner's counsel requesting an extension of time and documentation is not an answer or a request for a hearing, but never addressed the issue of whether justice and fairness required that Petitioner should be relieved of the default, because this was not urged. *See* Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 7. There is no showing that in denying the motion to reopen, the District Director abused his discretion.

Next, this Court must determine whether the Petitioner was properly the subject of rescission proceedings before the District Director while deferred for inspection or whether, as Petitioner contends, he was entitled first to a due process hearing in the form of an exclusion hearing before an Immigration Judge pursuant to Section 235(b) of the Act, 8 U.S.C. § 1225(b). *Compare* 8 C.F.R. § 246.1. *with* 8 C.F.R. § 235.6.

Admittedly, the Regulations authorize the District Director to defer inspection of an alien and, during this period of delayed inspection, the alien "may be detained, paroled, or paroled for deferred inspection". 8 C.F.R. § 235(3)(c); *see also* 8 C.F.R. § 235.2; Petitioner's Reply Memorandum, at 15; August 2, 1993 Transcript, at 9. In this case, when Petitioner presented himself to the Immigration Inspector at JFK Airport on July 31, 1991, he was paroled for deferred inspection. And, during the deferred inspection period, the District Director commenced a separate rescission proceeding pursuant to Section 246 of the Act, 8 U.S.C. § 1256, and the regulations promulgated thereunder.

■ Petitioner contends that the District Director had no authority to commence the rescission proceeding during the deferred inspection period and, that in doing so, the District Director violated the Immigration and Naturalization Service's own regulations which constitutes reversible error under *Montilla*, 926 F.2d 162.

In *Montilla*, our Court of Appeals considered whether an appellate court should review an alien's claim that the INS failed to comply with its own regulations and established procedures under the harmless error standard or reversible error standard. The Second Circuit rejected a prejudice test and adopted a reversible error standard. Accordingly, the Court reversed the Board of Immigration Appeals which had applied the prejudice test and remanded the case.

The appellant, in *Montilla*, had petitioned for review of a final order of deportation claiming that the Immigration Judge failed to advise him of his right to counsel as provided in the Immigration & Naturalization Service's own regulation, Regulation 242.16 (1990).[9] The Court of Appeals held that an alien who claims that the INS failed to comply with its own regulations or established procedures need only show "that the subject regulations were for the alien's benefit and that the Immigration & Naturalization Service failed to adhere to them." *Montilla*, 926 F.2d at 169. The Court of Appeals held that "[c]areless observance by an agency of its own administrative processes weakens its effectiveness in the eyes of the public because it exposes the possibility of favoritism and of inconsistent application of the law." 926 F.2d at 169. The Court in *Montilla* also held that "the efficient use of scarce judicial resources is promoted by remand", as it relieves the courts of the burden of having to "decide whether in hindsight the positives might so outweigh the negatives as to succeed in altering the result reached by the INS." 926 F.2d at 169. If the matter is remanded with instructions that the INS comply with its own regulations, "then the determination whether a petitioner merits ... relief is properly left to the wisdom and expertise of the INS in the first instance. Review, if later required, would then be un-

---

9. Regulation 242.16(a) provides that at the opening of a deportation hearing:

The Immigration Judge shall advise the respondent [alien] of his right to representation, at no expense to the Government, by counsel of

his own choice ... and require [the alien] to state then and there whether he desires representation....

8 C.F.R. § 246.16(a).

der the deferential abuse of discretion standard." *Id.* (citations omitted).

The Court of Appeals in *Montilla* relied in part on the Supreme Court's holding in *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974), reasoning that even when agency regulations are more stringent than required by the due process clause of the Fifth Amendment, fundamental notions of fair play require strict adherence by an agency to its own regulations. 926 F.2d at 164, 167, *citing Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). The *Morton* case seems to provide little support for the far reaching rule stated in *Montilla.* In *Morton,* the Supreme Court considered whether the Bureau of Indian Affairs could deny general assistant benefits to a Native American on the ground that he or she lived off the reservation. By the Bureau's own admission this policy of restricting general assistance to those directly on the reservation was contained only in an internal operations Manual of the Bureau. The Court found that policy was void because of the Bureau's failure to publish eligibility requirements in the Federal Register. This was inconsistent with the Bureau's Manual, which stated that any such directive should be published. 415 U.S. at 235–236, 94 S.Ct. at 1074–1075. The Court held that the Bureau's failure to abide by its own procedures, which required publication, rendered the provision invalid and that "[t]he denial of benefits to these respondents under such circumstances is inconsistent with 'the *distinctive obligation of trust* incumbent upon the Government in its dealing with these dependent and sometimes exploited people.'" 415 U.S. at 236, 94 S.Ct. at 1075, *quoting Seminole Nation v. United States,* 316 U.S. 286, 296, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480 (1942) (emphasis added). Arguably, the Supreme Court's holding in *Morton* should not have been transferred without limitation to the field of immigration. For it has long been recognized that Native Americans have a unique relationship with the Federal Government. *See, e.g., United States v. Sioux Nation,* 448 U.S. 371, 408, 100 S.Ct. 2716, 2737,

65 L.Ed.2d 844 (1980) (Federal Government acts as guardian of native interests); *United States v. Kagama,* 118 U.S. 375, 383, 6 S.Ct. 1109, 1113, 30 L.Ed. 228 (1886) ("These Indian tribes are the wards of the nation."); *Cherokee Nation v. Georgia,* 30 U.S. (5 Peters) 1, 17, 8 L.Ed. 25 (1831) (Native Americans "relation to the United States resembles that of a ward to his guardian.").

■ An alien seeking admission to the United States, unlike a Native American, requests a privilege, for the power to admit or exclude aliens is a sovereign prerogative. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 328, 74 L.Ed.2d 21 (1982). There is no Constitutional right to be admitted into the United States. The entire matter of immigration is within the plenary control of Congress. *See* U.S. Const. art. I, § 8, cl. 4 (The Congress shall have power ... [t]o establish an uniform Rule of Naturalization ..."). Indeed, " 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977) *citing Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909). "[I]n the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Id. citing Mathews v. Diaz,* 426 U.S. 67, 81–82, 96 S.Ct. 1883, 1892–93, 48 L.Ed.2d 478 (1976).

Recently, in *Waldron v. I.N.S.,* 994 F.2d 71 (2d Cir.1993) [10], the Second Circuit adhered to its view expressed in *Montilla* which seems to require remand whenever *any* regulation for the benefit of an alien is not followed. In *Waldron,* the Court granted a petition for review, reversed the Board of Immigration Appeals and vacated a Deportation Order, after concluding that the Immigration & Naturalization Service had not complied with Regulation 242.2(g) (notice of right to communicate with consulate) and 3.7

**10.** During oral argument on August 2, 1993, the Government advised this Court that it has filed a petition for rehearing in *Waldron.* August 2,

1993 Transcript, at 33–34. This Court is unaware of any determination of that petition as of the date of filing of this Memorandum & Order.

(notice of certification of case) and that these regulations were for the benefit of aliens.

The Government argues that the standard announced in *Montilla,* and reaffirmed by the Second Circuit in *Waldron,* is "inapplicable in the exclusion context" because it rests on the "constitutional underpinnings of due process." Government's Brief, at 47. Our Court of Appeals, however, expressly rejected this argument when in *Waldron* the Court concluded that "there is no indication in *Montilla* that its holding was limited to constitutional or federal statutory rights." 994 F.2d at 77–78.

The rule of *Montilla–Waldron* in this Circuit, if is to be applied literally, places aliens seeking a favor from our nation which, within its national sovereignty it may grant or withhold, in a better litigating position in our Court than a citizen presumed innocent but charged with crime. Due process, in the case of the latter, includes a recognition that "the perfect trial, from the prosecution or defense standpoint, is as rare as the perfect crime." *United States v. Corey,* 566 F.2d 429, 433 (2d Cir.1977) (Oakes, J.) The criminal defendant may not prevail on appeal where the error below is harmless, even if it arises to Constitutional magnitude. *See United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (prosecutor's comment to jury on defendant's failure to offer evidence was harmless beyond a reasonable doubt); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (pretrial confession obtained by a police officer who posed as fellow prisoner confined in a cell with petitioner was harmless beyond a reasonable doubt). Here under *Montilla–Waldron,* no detriment or prejudice to the alien need be shown, if it appears merely that there was an administrative regulation for the benefit of the alien which was not honored.

The facts in *Montilla–Waldron* hardly required or supported the issuance of such a far reaching statement of law that an alien need not make the basic showing of cause and prejudice. The right to counsel, and the right to have the consulate notified, and the right to be certified for appellate review are such basic rights that they might be found to

exist, together with the right to be informed of their existence, without regard to the administrative regulations, and prejudice could most likely be inferred in most cases. That such a conclusion should extend to *any* regulation, however trivial, is not justified by the facts in *Montilla* or *Waldron.*

In its effort to elude the rule of *Montilla–Waldron,* the Government argues that because the Petitioner is purportedly challenging his rescission proceedings directly under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* this Court should consider whether "any alleged error was prejudicial." Governments Brief, at 47; Court File No. 93 Civ. 4683, Doc. No. 1, ¶ 6; 5 U.S.C. § 706 (1977 & Supp.1993). While the District Director's determinations in the rescission proceeding may be reviewed under the more deferential standard found in the Administrative Procedures Act, the question of whether the INS complied with its own regulations in commencing the rescission proceeding in the first instance, rather than an exclusion proceeding, must be decided under the rule of *Montilla–Waldron* if that rule may not be limited to its own facts or distinguished on these facts.

The Government also argues that Petitioner is precluded from arguing before this Court that the INS failed to follow its own regulations, because this argument was not raised before the Immigration Judge or the Board of Immigration Appeals and, thus, Petitioner has failed to exhaust his administrative remedies as required under *Der–Rong Chour v. I.N.S.,* 578 F.2d 464, 468 (2d Cir.1978), *cert. denied,* 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979). In advancing this argument, however, the Government fails to comprehend the procedural quagmire in which the Petitioner would be placed should this Court agree. The Immigration Judge and Board of Immigration Appeals concluded, and properly so under their own regulations, that they lacked power to vacate the District Director's Rescission Order. If this Court were to accept the Government's argument, the Petitioner would have no forum anywhere in which to raise his procedural due process issue. This cannot be so. In the absence of such administrative jurisdic-

tion to resolve his due process issue, it may be adjudicated in this Court on the merits, without any need to exhaust an administrative remedy which the administrators have held, properly, does not exist.

In this case, Petitioner contends that the Immigration and Naturalization Services did not comply with Section 235(b), 8 U.S.C. § 1225(b), and Regulation 235.6 when during the deferred inspection period, it commenced rescission proceedings, rather than exclusion proceedings, against the Petitioner.

Section 235(b) of the Act states that "every alien . . . who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer." [11] 8 U.S.C. § 1225(b). Regulation 235.6 provides that: "[i]f, in accordance with the provisions of section 235(b) of the Act, the examining officer detains an alien for further inquiry before an immigration judge, he shall immediately sign and deliver to the alien a Notice to Alien Detained for Hearing by an Immigration Judge (Form I-122)." 8 C.F.R. § 235(b). Clearly, Regulation 235(b) is for the benefit of aliens, as it requires that he or she receive notice of the right to a hearing before an Immigration Judge upon the completion of their deferred inspection.

Petitioner was given notice pursuant to Regulation 235(b) on March 6, 1992, the day his inspection was completed. On the same date that District Director rescinded Petitioner's lawful permanent resident status pursuant to Section 246 of the Act, 8 U.S.C. § 1256. Petitioner contends that the District Director had no authority to commence the rescission proceeding during the deferred inspection period and, that in doing so, the District Director violated INS's own regula-

tions which constitutes reversible error under *Montilla–Waldron*. It is argued that an examining immigration officer may only refer an alien's case to the District Director under the circumstances delineated in Regulation 236.7 [12]. Such circumstances are not present in Petitioner's case.

The Government maintains that under Section 246 the District Director may rescind an adjustment of status at any time within five years of the adjustment, even where, as here, the rescission occurs during an inspection period. The Government also maintains that Petitioner's deferred inspection was not completed until March 6, 1992 and then Petitioner was served immediately with notice of a hearing before an Immigration Judge, as required under Regulation 235.6.[13]

Section 1256 of Title 8 provides in part:

(a) . . . . If, *at any time within five years* after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of the law to that of an alien lawfully admitted to permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made.

8 U.S.C. § 1256 (1970 & Supp.1993) (emphasis added). The Attorney General has delegated responsibility for making such decisions to the District Directors. 8 C.F.R. § 100.2(a), (e). Regulation 246.1 states that

---

**11.** The term immigration judge is used interchangeably with the term special inquiry officer in the Regulations. 8 C.F.R. § 1.1(1).

**12.** Regulation 236.7 states that:

If the examining immigration officer has reason to believe that the cause of an alien's excludability can readily be removed by the posting of a bond in accordance with section 213 of the Act, or by the exercise of section 211, section 212(d)(3) or (4), or section 212(c) of the Act, or by granting permission to reapply for admission after deportation or removal,

he may in lieu of detaining the alien for a hearing in accordance with section 235(b) and section 236 of the Act refer the alien's case to the district director within whose district the port is located for consideration of such action and defer further examination pending the district director's decision. . . .

**13.** Service of the exclusion notice, Form I-122, was conceded by petitioner's prior attorney. Record, at 121.

**1430**

"[i]f it appears to a district director that a person residing in his district was not in fact eligible for the adjustment of status made in his case, a proceeding shall be commenced by the personal service upon such person of a notice of intention to rescind...." 8 C.F.R. 246.1.

In this case, Petitioner's status was adjusted to that of a lawful permanent resident on April 8, 1991 and the rescission was commenced by notice dated January 16, 1992, some nine months later. There can be no doubt that the rescission proceedings were commenced within the applicable limitations period. Petitioner asserts that Regulation 235.7 somehow divests the District Directors of authority to act under Section 246 during the deferred inspection period. This construction is inconsistent with the plain and rather broad language of Section 246 of the Act. Section 246 grants District Directors far-reaching authority to rescind an alien's permanent resident status at *any time* within five years of that status being granted, provided, of course that Part 246 of Chapter 8 of the Code of Federal Regulations has been complied with. There is no statutory or regulatory bar to instituting rescission proceedings while an alien is in deferred inspection.

While Regulation 235.7 describes some of the circumstances under which an alien's case may be referred to the District Director during the deferred inspection period, nothing in the Regulations or the Act would support plaintiff's assertion that Regulation 235.7 bars the District Director from proceeding in the first instance, and without any such reference, under Section 246 to determine whether Petitioner was eligible for an adjustment of status. Under Section 246, the District Director has statutory authority to rescind Petitioner's permanent resident status whenever it appears that the Petitioner was not in fact eligible for such an adjustment of status. This Court concludes that the Petitioner was properly the subject of rescission proceedings before the District Director, notwithstanding his deferred inspection.

Petitioner argues, alternatively, that although the rescission proceeding was conducted ostensibly to determine whether Petitioner was eligible at the time for the adjustment of status granted to him in April of 1991, the District Director's decision established excludability *a fortiori*. Petitioner argues that such a result would violate the spirit of Section 235(b) of the Act since an exclusion hearing before an Immigration Judge is the "sole and exclusive procedure for determining the admissibility of a person to the United States." *Landon v. Plasencia*, 459 U.S. 21, 27–28, 103 S.Ct. 321, 326–327, 74 L.Ed.2d 21 (1982); Petitioner's Reply Memorandum, at 16.

In the rescission proceeding, the District Director considered merely whether Petitioner was eligible for special immigrant status at the time he had secured that status, and determined that he was not. Once the District Director made the decision to rescind, the Petitioner was "subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made." 8 U.S.C. § 1256. Thus, Petitioner was to be treated as any other non-immigrant alien.

In a separate exclusion proceeding, the Immigration Judge determined that Petitioner was excludable under 212(a)(7)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid immigrant visa or other documentation permitting entry, based on the concession of that fact by prior counsel. Assuming that a District Director's decision to institute a rescission proceeding under Section 1256 does not necessarily result in a finding of excludability or ineligibility for admission,—counsel's tactical decision to concede the same certainly does.

■ In any event, the Court is not persuaded by Petitioner's argument. While the issue of admissibility or excludability must be decided in an exclusion proceeding before an Immigration Judge, in certain instances such proceedings may be *pro forma* because of a prior judicial or quasi-judicial determination. *See, e.g., In re Belenzo*, 17 I. & N.Dec. 374 (1981) ("Congress must have been aware that rescission by returning the alien to nonimmigrant status, in fact, established [the alien's] deportability on the ground that he had overstayed the period of his admission"). For example, in the situation where an alien is

found excludable on the basis of a drug related offense under 8 U.S.C. § 1182(a)(2)(A)(i)(II), the criminal conviction will provide a basis for exclusion unless there is a discretionary basis for relief from exclusion. If this Court were to adopt Petitioner's interpretation of Section 235(b), any ancillary proceedings, including criminal trials, that may ultimately form a basis for exclusion must be litigated and decided by an Immigration Judge. No such legislative intent can be inferred from the statute or its background.

Based on the foregoing, the Court concludes that the Immigration and Naturalization Service complied fully with Regulation 246.1 and Regulation 235.7. These regulations do not bar the institution of a rescission proceeding during the deferred inspection period and the commencement of the proceeding in this case did not constitute reversible error under *Montilla–Waldron,* nor any error.

■ Petitioner also complains that the District Director, in rescinding his permanent resident status, failed to comply with Immigration & Naturalization Service's regulations regarding the right to assistance of counsel and the right to a rescission hearing before an Immigration Judge. Petitioner's Memorandum, at 3. Specifically, Petitioner argues that the District Director failed to comply with Regulation 246.1 and Regulation 246.3. Petitioner's Memorandum, at 3, 8; Petitioner's Reply Memorandum, at 2. Petitioner maintains that these alleged failures also constitute reversible error under *Montilla–Waldron.* Thus, this Court must determine whether these regulations are for the benefit of aliens and, if so, whether the Immigration & Naturalization Service complied with them.

There can be no doubt that both of these regulations are for the benefit of aliens. Regulation 246.1 provides, among other things, that an alien served with a Notice of Intention to Rescind shall "be informed that he may have the assistance of counsel or be represented by counsel or representative of his choice . . ., without expense to the Government, in preparation of his answer or in connection with his hearing. . . ." 8 C.F.R. § 246.1. Regulation 246.3 provides that "[i]f, within the prescribed time following service of the notice [of intention to rescind] pursuant to § 246.1, the respondent has filed an answer which contests or denies any allegation in the notice, or a hearing is requested, a hearing . . . shall be conducted by a special inquiry officer. . . ." 8 C.F.R. § 246.3. The plain language of these regulations reveals that they were intended to provide aliens with notice of their right to have assistance of counsel in preparing an answer to the charges and a right to have a hearing before an Immigration Judge, if an answer complying with the requirements of Regulation 246.1 is filed or if they simply request a hearing.

Read literally, Regulation 246.1 requires only that the notice inform the alien that he may have the assistance of counsel in preparation of his answer or in connection with a hearing. Clearly, the Petitioner was given written notice on January 16, 1992 of his right to counsel.[14] But, he contends that when his first attorney withdrew from the case, some forty days after the notice was sent, and after the expiration of the time allowed to respond, the District Director was "then obligated to inform Petitioner again of his right to an attorney." Petitioner's Memorandum, at 3. There is no discernible basis for concluding that Regulation 246.1 required that more than one such notice to be sent. The notice that was provided complied with the letter and the spirit of Regulation 246.1.[15]

---

**14.** The January 16, 1992 letter, stated, in relevant part:

> You may have the assistance of, or be represented by, an attorney or other representative authorized to practice before the Immigration Service, without expense to the government, in preparation of your answer or in connection with your hearing and you may present such evidence as may be relevant to the rescission.

*See* Record, at 287.

**15.** Regulation 246.1 is easily distinguishable from the right to counsel provided in Regulation 242.16(a), as discussed in *Montilla, supra.* In *Montilla* the Petitioner was the subject of a deportation proceeding. In a deportation proceeding the Immigration Judge is required to advise the alien of his right to representation and the alien must state his wishes with respect to representation on the record. *Compare* 8 C.F.R. § 242.16(a) *with* 8 C.F.R. § 246.1.

■ With respect to Regulation 246.3, Petitioner argues that the District Director's decision rescinding his permanent resident status was invalid for lack of a hearing. The right to a hearing before an Immigration Judge in Regulation 246.3, however, is triggered only if an answer or a request for a hearing is filed pursuant to Regulation 246.1. If no answer is filed and no hearing is requested, the District Director must rescind the alien's status. 8 C.F.R. § 246.2. Thus, any right to a hearing to which Petitioner may have been entitled as a returning resident alien, was lost when Petitioner failed either to answer or request a hearing pursuant to Regulation 246.3, and not because of any failure by the INS to comply with its own regulations.

Petitioner attempts to avoid this result by arguing that the January 17, 1992 "letter written by the first of his two former attorneys was the functional equivalent of an answer which, under 8 CFR 246.3, mandated a hearing before an Immigration Judge and was not a default warranting rescission without a hearing." Petitioner's Reply Memorandum, at 2. This argument is inconsistent with present counsel's concession that Petitioner's first attorney failed to answer the charges in the notice of intent to rescind and with his second attorney's similar concession, Record, at 13, 121–22. In any event, the District Director rejected this argument on the ground that a request for an extension of time and a request for the production of documents [16] is not the functional equivalent of an answer in writing under oath setting forth the reasons why a rescission should not be made, nor is it a request for a hearing.

*See* District Director's Decision on Reconsideration, Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 7.

Petitioner, nonetheless, maintains that Regulation 246.3 was "obviously intended for those situations where an alien ignored the rescission notice or conceded the allegations against him." Reply Memo, at 3. To this Court, this point is by no means obvious, and represents a tortured interpretation of the Regulation 246.1. An alien in a rescission proceeding may not decide, unilaterally, to dispense with the regulation's requirements that the answer setting forth the reasons why the rescission should not be granted, be in writing under oath and filed within 30 days, or that a hearing be requested in writing within that time limitation.

■ Where, as here, no answer has been filed pursuant to 246.1, the District Director has jurisdiction to rescind an alien's status without a hearing pursuant to Regulation 246.2, and Regulation 246.3 is plainly inapplicable. Indeed, if the District Director had referred this matter to the Immigration Judge or the Board of Immigration Appeals, any decision by those bodies would have been reversed for lack of jurisdiction. *In re Rodriguez–Esteban,* 1989 WL 331869, 1989 BIA LEXIS 24 (BIA 1989) (Immigration Judge and Board of Immigration Appeals lack jurisdiction to reconsider a District Director's rescission order in deportation proceeding).

Based on the foregoing, the Court concludes that there has been no showing whatsoever that the District Director failed to comply with any of the *applicable* regulations

16. Petitioner's present counsel also refers to prior counsel's letter of January 17, 1992, requesting a copy of the documents supporting the charges, as a request for records under the Freedom of Information Act. Petitioner's Memorandum, at 3. Arguably, this most general request failed to "describe the record with sufficient specificity with respect to names, dates, subject matter and location to permit it be identified and located." 8 C.F.R. § 103.10(a)(2).

Even if this Court were to conclude that petitioner's request for documents constitutes a request for records under the Freedom of Information Act and 8 C.F.R. 103.10, the Service's failure to respond within 10 days of receipt of the request by the appropriate office, is deemed to be a denial under Regulation 103.10(c)(2) and petitioner had a right to appeal that denial, which he did not. 8 C.F.R. § 103.10(c)(2).

To the extent the petitioner is arguing that he was prejudiced in preparing an answer due to the Service's failure to comply with the document request, the Court rejects this argument as frivolous. There has been no showing that based on a lack of information the petitioner was unable to prepare his answer under Regulation 246.1. But if that were the case, petitioner simply could have requested a hearing while he pursued his rights under the Freedom of Information Act. Such a request would have preserved his right to appear before an Immigration Judge and contest or deny the charges under Regulation 246.3.

in rescinding Petitioner's permanent resident status. As such, this Court concludes that the District Director's March 6, 1992 Order rescinding Petitioner's lawful resident status, and his May 28, 1992 reconsideration of the same, is valid.[17]

 This Court, having decided the "core" issue, next considers Petitioner's argument that he was deprived of due process and a fair hearing in connection with his application for political asylum and withholding of deportation to Egypt. 8 U.S.C. §§ 1158(a), 1253(h) (1970 & Supp.1993). Petitioner complains that the Immigration Judge, in deciding whether to grant or deny Petitioner's request for asylum and withholding of deportation, failed to consider all the evidence in the record, received classified documents into the record in violation of Regulation 208.10(c), reviewed classified documents despite his representation on the record to the effect that he would not do so, and denied the Petitioner a meaningful opportunity to rebut the accusations contained in the Department of State's advisory opinion by denying Petitioner's request to serve interrogatories and a demand for documents.

 An alien seeking political asylum has the burden of demonstrating that he is a refugee as defined in Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). *See Gomez v. I.N.S.*, 947 F.2d 660, 663 (2d Cir.1991). A refugee is:

[A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of *persecution or a well-founded fear of persecution on account of race, religion, national-*

*ity, membership in a particular social group, or political opinion. . . .*

8 U.S.C. § 1101(a)(42)(A) (emphasis added).

 Once an alien has demonstrated that he has a "well-founded fear of persecution based on one of the enumerated factors," qualifying that person for refugee status, then the Attorney General in her discretion may grant asylum. 8 U.S.C. § 1158(a); *Melendez v. I.N.S.*, 926 F.2d 211, 214 (2d Cir. 1991) (applicant must show that a reasonable person in his situation would fear persecution). To succeed under Section 243(h) of the Act, the mandatory withholding of deportation provision, an alien must establish by a clear probability "that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1) (1970 & Supp.1993) [18].

If the Attorney General determines, however, that "[t]here are reasonable grounds for regarding the alien as a danger to the security of the United States," then an otherwise meritorious application for asylum and withholding of deportation, must be denied. 8 C.F.R. § 208.14(c)(3) (asylum); 8 U.S.C. § 1253(h)(2)(D) (withholding of deportation).

In this case, the Board of Immigration Appeals affirmed the Immigration Judge's denial of Petitioner's application on the ground that the Petitioner had not met his burden of proof for either asylum or withholding of deportation. The Board also affirmed the Immigration Judge's conclusion that even if Petitioner had met his burden of proving statutory and discretionary eligibility for the relief requested, the application should be denied because "there are reasonable grounds for deeming the applicant to be a danger to the security of the United States." Record, at 113, 115–16; *See also* Record, at 8.

---

**17.** Only the most confirmed disciple of the Dr. Pangloss school of jurisprudence would foresee a different ultimate result in this case should there be a remand to do it all over again pursuant to the rule of *Montilla–Waldron*. However, this practical aspect of the case may not be permitted to affect the outcome in this Court.

**18.** An alien who cannot establish eligibility for asylum cannot satisfy his burden for withholding of deportation because the burden for withholding of deportation is more stringent than that for asylum, but the grounds for obtaining either are identical. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1253(h)(1); *Saleh v. I.N.S.*, 962 F.2d 234, 240 (2d Cir.1992).

 In reviewing that aspect of the Board of Immigration Appeals decision which upheld the Immigration Judge's factual findings that the Petitioner had not established statutory eligibility for asylum or withholding of deportation, this Court applies the substantial evidence test. *Melendez v. I.N.S.,* 926 F.2d 211, 215–217 (2d Cir.1991). The discretionary denial of asylum is reviewed for an abuse of discretion. *Melendez,* 926 F.2d at 217; *Saleh v. I.N.S.,* 962 F.2d 234, 238 (2d Cir.1992).

Petitioner asserts, without any further explanation, that the Immigration Judge and the Board of Immigration Appeals "almost totally ignored the evidence presented by the petitioner, not even bothering to mention it or evalute [sic] it...." Petitioner's Memorandum, at 12. In a twenty-five page opinion, the Immigration Judge summarized and evaluated all the evidence with painstaking detail, including the testimony of plaintiff and the documentary proof offered by plaintiff. Also, the Immigration Judge found that Petitioner's testimony was not "sufficiently detailed, coherent or wholly believable." Record, at 114. The Board of Immigration Appeals agreed.

Based on this Court's review of the administrative record, this Court concludes that the Board of Immigration Appeals decision, as well as that of the Immigration Judge, on the application for asylum and withholding of deportation is supported by substantial evidence in the record. Fear of persecution, the basis for asylum, is not to be equated with an expectation or fear of prosecution. The latter is not a ground for asylum. The unclassified summary opinion of the State Department Office of Asylum Affairs, Bureau of Human Rights and Humanitarian Affairs notes that:

> We think that his acquittal in Egypt [in the Anwar Sadat assassination trial] reflect[s] the practice of the Egyptian courts whose judges we respected and enjoy a reputation for independence and their wish to hold the government to a high standard in bringing charges against individuals for security breaches and for fomenting sectarian violence.

Record, at 285.

 This Court also concludes that the Board of Immigration Appeals and the Immigration Judge had reasonable grounds for regarding the Petitioner as a danger to the security of the United States and therefore were required to deny his application for relief.

 Petitioner next argues that he was deprived of his right to a full and fair hearing on the ground that the Immigration Judge improperly considered "classified" information despite the Judge's representation on the record that he would not. Before reaching the merits of this argument this Court notes that it has declined, for policy reasons noted below, to receive the classified documents for *in camera* review.

At the asylum hearing on January 20, 1993, counsel for the Petitioner requested leave of the Immigration Judge either to have the classified document "reclassified, if possible, or [to] get a summary either from the agency or from [the Immigration Judge] as to its contents if [the Immigration Judge is] going to accept it into evidence." *See* Record, at 147. Judge Meisner did not rule on the request, but stated:

> What I am going to do is place this document in the record of the proceeding file *without opening it or considering it.* I do not have a classification, a Government classification, which would allow me to look at secret or classified information and, therefore, I am not in a position to open this envelope or look at it. If you wish, I will put it in the file in case the case goes up on appeal and then anyone who does have that type of classification may be able to review the document. But while I'll put it in the record of proceeding file, *it will not be considered by me and will not be a part of any evidence I consider in this case.*

*See* Record, at 147 (emphasis added). In his March 16, 1993 opinion, however, Judge Meisner noted that:

> The undersigned [Judge Meisner] received "secret level" security clearance and has

authority to read such document. Although the undersigned has authority to base his decision on the classified information contained in the advisory opinion, *the undersigned has not considered the classified information in reaching a decision in this case.* However, because the undersigned accepted the classified document, the Board and higher tribunals may consider the information contained in such document, should either party appeal from this decision. The undersigned notes that the information contained in the classified document is relevant to the case and is a more detailed account of applicant's alleged activities that are set forth in the unclassified U.S. Department of State's advisory opinion, dated October 23, 1992 and marked as Exhibit 6.

Record, at 98 (Emphasis added).

 As the Board of Immigration Appeals noted correctly, the Immigration Judge was entitled to consider the classified information under Regulations 208.11(c) and 236.3(c)(4) [19], once he determined that the information was relevant and informed the applicant that the classified information had been received.

The issue before this Court, however, is not whether the Immigration Judge, or the Board of Appeals for that matter, could consider or rely upon the classified information in rendering a decision, because they clearly could. The issue is whether the Petitioner was denied a fair hearing as a result of the Immigration Judge's decision to read the classified information after he assured Petitioner that he would not. Petitioner contends that he was—He maintains that, in

reliance on the Immigration Judge's representation that he would not open or consider the classified documents, Petitioner failed to seek either declassification or a more detailed summary of the document.

Anytime a judicial or quasi-judicial officer is in possession of information learned secretly, the scope and content of which can only be imagined, a litigant is disadvantaged. While this Court appreciates the enormous difficulty an alien faces in responding effectively to information kept secret, this Court concludes that the Petitioner was not denied a fair hearing as a result of the rather puzzling representation made by the Immigration Judge. While it is disturbing, as this Court has noted, that a trial judge should be in possession of information which is secret, and undoubtedly adverse, the Immigration Judge has represented that although he read it, he did not "consider" it in reaching his decision. Record, at 98. There is nothing in the record before us which suggests that this is untrue. Factfinders in the courts, both judges and jurors, are asked regularly to strike out or disregard in their considerations evidence that is highly prejudicial but not admissible, to which they have been exposed, usually, but not always, by mistake.[20] We presume they do so, in the absence of evidence to the contrary. In any bench trial, the judge must read inadmissible exhibits in order to rule on whether they are admissible. Doing so has never been a basis for reversal where the evidence properly admitted justified the result obtained.

Regulation 208.11(c) clearly states that "[a]ny Department of State comments . . .

19. Regulation 236.3(c)(4) provides that:

The Trial Attorney for the government may call witnesses and present evidence for the record, including information classified under E.O. 12356..., provided the Immigration Judge or the Board has determined such information is relevant to the hearing. When the Immigration Judge receives such classified information he shall inform the applicant. The agency that provides the classified information to the Immigration Judge may provide an unclassified summary of the information for release to the applicant whenever it determines it can do so consistently with safeguarding both the classified nature of the information and its source. The summary should be as detailed as possible

in order that the applicant may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state that such information is material to the decision.
8 C.F.R. § 236.3(c)(4). *See also* 8 C.F.R. § 208(11)(c).

20. *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (jury instructed to disregard prosecutor's questions regarding defendant's post-arrest silence); *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979) ("crucial assumption" underlying the system of trial by jury "is that juries will follow the instructions given them by the trial judge.").

*shall* be made a part of the asylum record." 8 C.F.R. § 208.11(c) (emphasis added). Accordingly, Petitioner knew that this classified information would become part of the administrative record which forms the basis of the Board of Immigration Appeals decision upon *de novo* review. Petitioner had "notice of the substance" of the classified information, since his counsel had received the four page "unclassified" opinion letter dated October 23, 1992 summarizing what is said to be in the classified document. Assuming counsel could have applied for a supplemental summary of that part of the classified information which allegedly "concern[ed] the continuing involvement of Abdul Rahman [Petitioner here] in terrorist activities", Record, at 285, the Department of State would have had the authority to deny the application. 8 C.F.R. § 236.3(c)(4) ("The agency that provides the classified information to the Immigration Judge *may* provide an unclassified summary of the information for release to the applicant whenever it determines it can do so consistently with safeguarding both the classified information and its source.") (emphasis added). Indeed, the Department of State implicitly did make such a determination when Director Denkert provided Petitioner only with a summary of Petitioner's alleged involvement in terrorist activities through June of 1992, but declined to describe his "continuing involvement." Record, at 282–285.

There is no statutory or regulatory authority which would support counsel's position that she was entitled to have a decision deferred in order to seek declassification of the information on behalf of Petitioner. The Court notes that Immigration & Naturalization Service Operation Instruction 103.2(g) leaves it to the discretion of the INS to determine whether the classifying authority might declassify information. *See* Gordon and Mailman, *Immigration Law & Procedure,* Volume 9, at 86 (1993) (Operation Instruction 103.2(g) provides that "When a denial decision may be based on classified derogatory information, consideration shall be given to requesting the original classifying authority to review the information to advise whether it may be declassified."). This Operation Instruction is discretionary and does not confer any rights or benefits on the Petitioner.

To the extent Petitioner is arguing that there has been no "showing or representation" on the record that the classified information is indeed classified pursuant to Executive Order Number 12356, 3 C.F.R., 1982 Comp. p. 166, the Court rejects this argument as unsupported. The record refers to the information as classified and there is no evidence to suggest otherwise. *See* Record, at 97 (statement of Immigration Judge); Record, at 4 (statement of Board of Immigration Appeals); Record at 285 (statement of State Department); Record, at 281 (record entry showing receipt of classified report).

■ Petitioner's final argument with respect to the classified documents is that he was deprived of his due process right to a fair hearing as a result of the Immigration Judge's denial of Petitioner's January 12, 1993 application to serve interrogatories and a request for the production of documents on the State Department to determine how the State Department arrived at the conclusions contained in the advisory opinion. Contrary to Petitioner's assertion, he does not have a right under the regulations to seek discovery.

This is so because Regulation 208.12(b), expressly provides:

> Nothing in this part shall be construed to entitle the applicant to conduct discovery directed towards the records, officers, agents, or employees of the Service, the Department of Justice, or the Department of State.

8 C.F.R. § 208.12(b) (1993).

Therefore, this Court concludes that there is no basis for disturbing the Board of Immigration Appeals' or the Immigration Judge's determination that the Petitioner is not eligible for asylum or withholding of deportation and that there are reasonable grounds for regarding him as a danger to the security of the United States.

■ Finally, this Court must consider Petitioner's claims regarding the revocation of his parole on July 2, 1993. Petitioner contends that the District Director of the Immigration & Naturalization Service revoked the Petitioner's parole without a hear-

ing, in violation of Regulation 212.5 of the Immigration and Naturalization Service and the due process clause of the Fifth Amendment. *See* Court File No. 93 Civ. 4661, Doc. No. 1, ¶ 2.

At oral argument before this Court on August 2, 1993, however, Petitioner's counsel acknowledged that the parole argument "mostly rises and falls with the main [or core] issue." August 2, 1993 Transcript, at 37. It must, because Regulation 237.2 provides that the INS "may take [an alien who has been finally excluded] into custody at any time." 8 C.F.R. § 237.2. On July 9, 1993, the Board of Immigration Appeals issued a final order of exclusion in this case. To the extent Petitioner persists with his claim that the District Director's July 2, 1993 decision to revoke his parole was accomplished in violation of Regulation 212.5, at a time when he was an excludable alien not yet subject to a final order of exclusion, the Court rejects the claim because neither the Act nor the regulation require a pre-termination hearing.

Under Section 1182(d)(5)(A), an alien subject to exclusion may be paroled "into the United States temporarily under such condition as [the Attorney General] may prescribe for emergent reasons or for reasons deemed strictly in the public interest ..., but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled...." 28 U.S.C. § 1182(d)(5)(A). The Attorney General has delegated responsibility for making such decisions to the District Directors. *See* 8 C.F.R. §§ 100.2(a), (e) and 212.5.

■ Regulation 212.5(d)(2)(i) authorizes the District Director in the area in which an alien is paroled to terminate parole upon written notice "when in the opinion of the District Director ... neither emergency or public interests warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(d)(2)(i) (1993). While a District Director has broad discretion in determining whether or not an alien's parole should be terminated, "[t]he discretion may not be exercised to discriminate invidiously

against a particular race or group or to depart without rational explanation from established policies." *Bertrand v. Sava*, 684 F.2d 204, 212 (2d Cir.1982).

■ The standard for review of a District Director's decision to terminate or revoke parole was established in this Circuit in *Bertrand v. Sava*, 684 F.2d 204 (1982). In *Bertrand*, our Court of Appeals considered whether federal courts may exercise habeas corpus jurisdiction to review a decision by an Immigration & Naturalization Service District Director to deny parole to non-resident aliens properly detained on arrival, but not yet formally "excluded" from the United States. The Petitioners, fifty-three unadmitted Haitian immigrants, were detained upon their arrival in the United States and denied parole. The district court held that the Immigration & Naturalization Service District Director had abused his discretion in denying the request and ordered Petitioners released. The Second Circuit Court of Appeals, in reversing the district court, held that "the Attorney General's exercise of [her] broad discretionary power must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole." 684 F.2d at 212–213.

Petitioner has made no showing that the District Director failed to exercise his discretion or that he acted in bad faith or irrationally. Admittedly, the Petitioner received written notice of the termination of his parole and, in that notice, the District Director stated that in his opinion Petitioner's "continued parole is neither warranted by emergency nor the public interest." *See* Court File No. 93 Civ. 4683, Doc. No. 1, Ex. 9. Regulation 212.5(d)(2)(i) requires no further explanation.

For the foregoing reasons, this Court concludes that Petitioner's claims are without merit and that all relief shall be denied. Pursuant to the agreement of counsel and in the interests of Justice, deportation is stayed temporarily by this Court for a period of ten (10) days from the date hereof to allow Peti-

tioner to seek a further stay from the Court of Appeals. *See generally,* Local Civil Rule 30(c)(2) of the Southern District of New York.

So Ordered.